THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK HUNT, Defendant-Appellant.

Third District    No. 80-90

Opinion filed November 26, 1980.—Rehearing denied December 23, 1980.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Patrick Hunt, was charged by indictment with one count of burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a)) and three counts of theft (Ill. Rev. Stat. 1979, ch. 38, pars. 16—1(a)(1), (d)(1)) on July 19, 1979. Following a bench trial, the defendant was found guilty on all counts. In an order dated February 14, 1980, the Circuit Court of Tazewell County entered judgment against the defendant on the burglary count only, and sentenced Hunt to the Department of Corrections for a term of 5 years. It is from this burglary conviction that the defendant appeals, raising as his only issue whether the inculpatory inference raised by the recent, exclusive and unexplained possession of stolen property was rebutted in this case by the uncontradicted testimony of four defense witnesses and one prosecution witness.

Five witnesses testified for the State. The first to testify was Donald Norris, the burglary victim. At approximately 10 or 10:30 p.m. on June 27, 1979, Norris left his Pekin apartment for work. At about 5 a.m., a police officer came to his place of employment and informed him that his apartment had been entered. Upon returning home, Norris found his apartment had indeed been burglarized. A television set, camera, tool box and tools, lock box, and a souvenir dueling pistol had been taken. Fingerprints were found at the crime scene, but according to Robert Du Bois, a crime scene technician for the Illinois Department of Law Enforcement, they did not match the defendant's fingerprints. The only latent fingerprints identified were those of Norris.

The next State witness was Eddie Thomas, a Pekin police officer. Thomas and his partner were on duty conducting tavern checks the morning of June 28, 1979, when at 12:03 a.m. they were approached by two young boys and informed that a television set and some other merchandise was located in bushes behind Oltmar's tavern. Thomas and his partner then went to the place indicated by the boys, and they found a television set, tool box, cash box, and a pillow case full of other items. Norris' name and address was found on a name tag attached to the tool box. Thomas left his partner at the scene and went to Norris' residence where he discovered evidence of a burglary.

After Thomas reported the burglary, he returned to the spot behind Oltmar's tavern where the items were found and met two plainclothes officers, one of whom was Jim Conover. Conover and his partner staked out the area while Thomas remained in the vicinity. Sometime between midnight and 1:30 a.m., Conover saw two individuals, neither of whom

was the defendant, walk from the front of Oltmar's tavern to the location of the stolen items. The two then picked something up and walked to the north along some railroad tracks until they were out of sight. Conover and his partner followed on foot. At this time, the officers observed a white station wagon turn south into a nearby alley and proceed toward the bushes where the property had been found. There the car stopped with its headlights out. Conover and his partner then saw two persons loading something into the car. After they finished loading the car, they entered through the rear doors. The lights on the car were then turned on, and it proceeded in a southerly direction. Conover radioed Thomas and told him to stop the station wagon. Thomas did so and found four persons inside, one of whom was the defendant. The defendant was sitting in the right front seat. Wallace McCreary, the owner of the car, was driving. The defendant's brother, Kenneth Hunt, was sitting in the back seat with Rodney Giddens. The tool box and lock box stolen from Norris' apartment were in the back seat with Kenneth Hunt and Giddens. Norris' television set was in the rear luggage area. The souvenir dueling pistol was found on the front seat between the defendant and McCreary.

Patricia Gale was the final prosecution witness. She testified that the evening of June 27, 1979, six people were at her Pekin apartment. Among her guests were the defendant and Wallace McCreary. According to Gale, the defendant arrived at approximately 7 p.m. and stayed until 12. During this five-hour time span, the defendant never left her apartment. Although he left at 12, he returned a half hour later with another of his brothers, John Hunt. The defendant then again departed, apparently to go to his home three blocks away, and returned about 12:50 a.m. When he returned, he asked McCreary if he (Hunt) could borrow McCreary's car. McCreary refused Hunt's request, claiming that there was not enough gas in the car. At this time, the defendant left and returned home. Five minutes later McCreary left to pick up the defendant because he "felt bad" about not giving him the car. Gale testified that the defendant wanted the car so he could go and pick up some money owed to him by someone for whom he was doing painting.

Gale further testified that Kenneth Hunt was also at her apartment the evening of June 27. Between 9 and 10:30 p.m., Kenneth Hunt left and did not return until 12:15 a.m. When he returned, he was accompanied by Rodney Giddens. Kenneth asked for Patrick Hunt upon his return, but finding he was not there, left with Giddens shortly after their arrival.

Four witnesses testified on the defendant's behalf. The first was Nelson Boyer. Boyer testified that he and his wife were present at McCreary's apartment (which he apparently shared with Patricia Gale) the evening of June 27. John Hunt, Patrick Hunt, Gale and McCreary were also there. The defendant was present when Boyer and his wife

arrived between 8:30 and 9 p.m. At approximately 9:30, Boyer left with John and Kenneth Hunt for some beer. However, Kenneth Hunt did not return to the apartment with Boyer and John Hunt. The defendant and his brother, John, left the apartment between 11:30 and 12 to get something to eat, and at the time Boyer and his wife departed (12:45), the defendant had not yet returned.

John Hunt testified that except for the time he, his brother Kenneth, and Boyer left McCreary's apartment to get beer, he was always in the company of the defendant while at the apartment the night of June 27. At 11:45, John and the defendant left the apartment to get something to eat at the Red Wagon restaurant. They returned about 45 minutes later. After they returned to the apartment, they stayed for 10 to 15 minutes. Subsequently, John drove the defendant home, which was about three blocks away, and drove home himself.

Wallace McCreary was the next defense witness. He testified that he arrived at his apartment at about 6 or 7 p.m. June 27 with the defendant and Kenneth Hunt. Gale was already there when the three arrived. Boyer and his wife arrived later.

McCreary testified that at about 9:30 or 10 John Hunt, Kenneth Hunt, and Boyer left to get beer. About a half hour later only John and Boyer returned. At 12 a.m., John Hunt and the defendant left for the Red Wagon restaurant. This was the first time the defendant left McCreary's apartment since his arrival. They returned about 12:30 or 12:45 and left together a short time later. John was going to drive the defendant home.

According to McCreary, the defendant returned to the apartment shortly after being driven home, and asked him if he could borrow McCreary's car. McCreary initially refused because the car was low on gas, and the defendant left. However, McCreary reconsidered his refusal and left in his car (the white station wagon) to pick up the defendant.

When McCreary arrived at the defendant's home, he testified he found Kenneth Hunt and Rodney Giddens there. Their motorcycle had run out of gas, and so they asked for a ride to the south side of Pekin where Giddens lived. McCreary agreed, and all four got in the car. McCreary took Giddens and Kenneth Hunt as far as the area near Oltmar's tavern, where he let Giddens and Kenneth Hunt off. Giddens told McCreary that he lived nearby and was going home.

After McCreary left Giddens and Kenneth Hunt off, he and the defendant drove to several nearby places in an effort to obtain gasoline, but found no success. Eventually they returned to the vicinity of Oltmar's tavern. Driving down an alley toward a through street, McCreary was waved down by Giddens and Kenneth Hunt. McCreary stated that he did not expect to see either of them there. At this point, McCreary stopped his car. Giddens and Kenneth Hunt told McCreary that "they had found

some stuff" and wanted to load it in his car. McCreary agreed, and in order to save fuel, shut the engine off and turned off his headlights. Giddens and Kenneth Hunt then proceeded to load the goods into McCreary's car. Neither McCreary nor the defendant assisted in any way. Further, nothing was said by anyone at any time about a burglary or about the goods being stolen. After Kenneth Hunt and Giddens were finished, they got into the car. They were apparently headed for Hunt's father's house when the police stopped the car a short time later.

The final defense witness was Rodney Giddens. Giddens admitted that he previously pleaded guilty to the June 27 Norris burglary. He testified that he, Kenneth Hunt, and a third individual committed the burglary. When asked who this third person was, Giddens at first refused to answer, but then stated that he could not recall. He did state, however, that the defendant was not the third individual.

■■ "Evidence of a knowing, recent, exclusive, and unexplained possession of stolen property by an accused, either singly or jointly with others, may raise an inference of the accused's guilt of burglary and is sufficient, by itself, to support a conviction." (*People v. Sanders* (1979), 77 Ill. App. 3d 115, 116, 395 N.E.2d 1242, 1243. Accord, *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873; *People v. Reynolds* (1963), 27 Ill. 2d 523, 190 N.E.2d 301; *People v. Heard* (1980), 80 Ill. App. 3d 701, 400 N.E.2d 65; *People v. Craig* (1979), 79 Ill. App. 3d 584, 399 N.E.2d 168; *People v. Klausing* (1976), 41 Ill. App. 3d 588, 353 N.E.2d 441.) The only question presented in this case is whether that inference has been effectively rebutted by the uncontradicted testimony of four defense witnesses (John Hunt, Boyer, McCreary, and Giddens) and one State witness (Gale) so as to raise a reasonable doubt of defendant's guilt.

■■ As a preliminary matter, it must be pointed out that we are concerned with the testimony given at defendant's trial only as it relates to his whereabouts at the time of the Norris burglary. Even if the defendant had knowingly participated in the secreting of the burglary proceeds, he would be no more than an accessory after the fact with regard to the burglary itself. As such, he cannot be held legally accountable for the acts of the burglars (Ill. Rev. Stat. 1979, ch. 38, par. 5—2; *People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352).

Briefly reviewing the evidence, Gale, McCreary, John Hunt, and Boyer all provided alibis for the defendant. It is clear that the burglary could have been committed only beween 10 p.m. (when Norris left his apartment for work) and 12 (when the two boys discovered the stolen property and informed Officer Thomas of its location). Gale testified that at all times from 7 until 12, Patrick Hunt was at her (McCreary's) apartment. Her testimony was fully corroborated by McCreary, who testified that he arrived at the apartment with Kenneth Hunt and the defendant at

about 6 or 7 the night of the 27th, and that the defendant did not leave until 12, when he left with his brother, John, to go to a restaurant. Boyer's testimony was similar, although he himself was absent from the apartment once during the evening. John Hunt testified that he was with the defendant virtually all night until 1 a.m., except for the time he went with Boyer and Kenneth Hunt to get beer. Finally, Giddens, who was one of the perpetrators of the crime, did not provide an alibi but stated that the defendant did not participate in the burglary.

■■■ The alibi evidence presented by three defense witnesses and one State's witness was unrefuted and uncontradicted. However, the trier of fact is not required to believe alibi evidence, even though it is unrefuted. (*People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263; *People v. Grice* (1978), 60 Ill. App. 3d 7, 376 N.E.2d 283.) The value of alibi evidence necessarily hinges upon the credibility and believability of the witnesses providing the alibi, questions which are within the exclusive domain of the trier of fact. Here, it is evident that the trial court simply did not accept the testimony of the witnesses who provided the defendant with an alibi as true. That was its prerogative. (*Grice*; see *Perry*.) It heard all of the testimony and was given the opportunity that is not presented to this court to view the witnesses' demeanor. We cannot say as a matter of law that on the basis of the record before us, the trial court's rejection of the alibi testimony (and Gidden's testimony as well) was erroneous. Consequently, the inference of an accused's guilt of burglary that accompanies the recent, exclusive, and unexplained possession of stolen goods was unrebutted so as to raise a reasonable doubt of defendant's guilt.

For these reasons, we affirm the judgment of the Circuit Court of Tazewell County.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.