THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFREDO ALVAREZ, Defendant-Appellant.

First District (4th Division)    No. 79-1699

Opinion filed February 5, 1981.

112

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and John Ashenden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Alfredo Alvarez, was charged with the offense of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1). Following a jury trial, defendant was convicted and sentenced to serve a minimum of not less than 1 year nor more than 4 years in the Illinois Department of Corrections. From that judgment and sentence, defendant appeals.

The issues presented for review are (1) whether the court improperly denied defendant's motion to suppress his statement where the police testimony was insufficient to rebut defendant's testimony, corroborated by photographs, that he had been beaten; (2) whether defendant was proved guilty beyond a reasonable doubt with credible evidence; and (3) whether defendant was denied a fair trial where the prosecutor informed the jury that defendant was on felony probation, commented on other facts not in evidence, and offered her personal opinion of defendant's allegation that he was coerced into a confession. We affirm.

On August 30, 1977, at 11:20 p.m., police officers John Carney and Kenneth Quinn received a radio call directing them to go to the Grand Lincoln-Mercury dealership at 4001 West Grand, in Chicago. The officers pulled up into the rear of the location and noticed a hole in the door. Officer Carney positioned himself near the hole in the door while Officer

Quinn drove down the alley, positioning himself at the other end of the building. Officer Carney saw two people exit the building through an overhead door. Officer Carney called for them to stop, but they ran westbound in the south alley directly behind the building. While attempting to flee, they dropped what appeared to be blankets or automobile covers. When they jumped over one fence, one of the men, later identified as the defendant, fell. They continued to run, jumping over a second fence. Defendant fell again. At that point, the two offenders separated. Officer Carney pursued defendant to the end of the block where defendant stopped. After defendant stopped, the officer took out his baton. He searched defendant, handcuffed him, and told him he was under arrest. Officer Carney walked defendant back to where the chase began. He advised defendant of his constitutional rights and defendant indicated he understood those rights.

Officer Carney conversed with the defendant in the presence of Officer Quinn. Defendant stated that he had gone through the hole in the door with two other people, one of whom he identified only as "Jose," and that there might be another person still in the building. Defendant was asked why he limped; he answered that he was in a motorcycle accident and had a metal pin in his "knee." Defendant was transported to the police station where he indicated he was injured; thereafter, he was taken to Saint Elizabeth's hospital.

The canine unit was called to assist the officers. Officer Quinn stated that when he entered the building, he noticed tools and other items had been stockpiled near the door. The red auto blankets, which defendant and the other offender were carrying, contained a pair of binoculars and a crescent wrench.

Defendant's testimony contradicted that of Officers Carney and Quinn. Defendant stated that he was at Jimmy's Hot Dog Stand on Grand and Pulaski at 11 p.m. After purchasing something to eat, he pulled his car onto Hirsch Street and parked it near a gas station; there, he finished eating. He became nauseated, left the car, and took a walk up Hirsch Street. Because he was still feeling nauseated, he sat down on some stairs. According to the witness, a police officer suddenly appeared and grabbed him. The officer pulled out his night stick. Defendant asked the officer what was wrong. The officer ordered defendant to turn around, searched him, handcuffed him, and dragged him toward the alley on Pulaski where Officer Quinn was waiting.

Further testifying, defendant stated that Officer Carney showed him a hole in the door of the auto dealership and accused him of burglarizing the place. Defendant denied the burglary. Then Officer Carney struck him very hard; defendant lost his breath and fell. He then hit defendant in the stomach with the night stick. While defendant was down, the officer

hit him in the back, making him fall to the ground. Officer Carney again stated that defendant had burglarized the auto dealership, and defendant again denied it. The officer attempted to get defendant to stand, but defendant stated he remained in a bent position so as to avoid being hit in the stomach again. Carney jabbed defendant with the club, hit him, and kicked him. When Officer Carney pulled out his gun, the defendant became frightened and admitted committing the burglary. Subsequently, defendant admitted everything he was asked.

Defendant stated he was wearing a T-shirt, a pair of blue pants, and boots when he was arrested. Officer Carney had testified that the two men were wearing dark clothing. Defendant told the police he was driving a 1965 Chevrolet because he did not want them to impound his wife's car. At the police station, defendant called his wife and told her where her 1976 Grand Prix was located. During questioning at the station, defendant denied ever being in the Grand Lincoln-Mercury dealership on August 30, 1977, denied running from Officer Carney, and denied committing the burglary. Defendant testified that the officers asked him whether he wanted to go to the hospital since his leg was hurting. Defendant answered affirmatively. Defendant also stated that while he was at Saint Elizabeth's, he told hospital personnel he was beaten by the police.

At Saint Elizabeth's Hospital, Dr. Evangelista examined defendant. The doctor indicated the injuries to defendant were abrasions on the right upper side of the chest wall and an abrasion on defendant's left thigh. Dr. Evangelista testified that scratches are not consistent with someone hitting the person with a club.

At 2:15 a.m. on August 31, 1977, Alvarez was questioned by Robert Lombardo, an investigator with the Chicago Police Department. Defendant told the investigator he was advised of his constitutional rights by the arresting officers and denied committing the burglary. Defendant stated he admitted committing the burglary because "you tell the police whatever they want." Defendant did not tell the investigator he was beaten by the police. Lombardo did not notice any marks on defendant's face, arms or body.

Robert Juskiewuic, a law clerk, was given an assignment by the defense to interview Alfredo Alvarez at the jail and to take pictures of him. Juskiewuic testified that on September 2, 1977, at 2:30 p.m., he visited and took pictures of defendant. He noticed several bruises on defendant's chest, back, shoulder, thigh and right leg. The pretrial record indicated that the photographs of defendant were taken on September 21, 1977.

On defendant's motion to suppress, the trial court found that Officer Carney did advise defendant of his constitutional rights; that defendant

understood those rights and made a knowing waiver of them; that neither Officer Carney nor Officer Quinn inflicted any injury upon defendant; that if any injuries were suffered by defendant on the date in question, they were suffered prior to the time of the arrest; and that there was probable cause to make the arrest. The motion to suppress was denied.

Defendant's first assignment of error is whether the court improperly denied the motion to suppress his statements where the police testimony was insufficient to rebut defendant's testimony, corroborated by photographs, that he had been beaten. Prior to trial, defendant filed a petition to suppress all statements, admissions, and confessions for the reasons that he was not advised of his constitutional rights to counsel or given *Miranda* warnings. He also alleges that any statements obtained from him were coerced after the police officers threatened physical harm to him and beat him, thus, rendering those statements involuntary.

■■ The test for the admission of a confession is whether it was made freely, voluntarily and without compulsion. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 278, 393 N.E.2d 1098, 1113.) Whether a statement is voluntarily given will depend upon the totality of the circumstances. When the trial court makes its decision, it is not required to be convinced beyond a reasonable doubt. If the trial court finds that the statement was voluntary, the ruling will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Zamp* (1980), 84 Ill. App. 3d 688, 693-94, 406 N.E.2d 96, 100.) In this case, the trial court found that the statements made by defendant were voluntary. Testimony by Dr. Evangelista indicated defendant's injuries were not the result of a physical beating. Officer Lombardo, who interviewed defendant a few hours after his arrest, did not notice any marks or injuries on defendant, nor did defendant suggest to Lombardo that he had been beaten by the police. The only evidence offered by defendant in support of physical coercion were photographs taken by Robert Juskiewuic.

Since the trial court had the opportunity and was in a better position to observe the witnesses, determine their credibility, and the weight to be given their testimony, we will not disturb its ruling that the defendant's statements were given voluntarily.

■■ Defendant contends he was not proved guilty beyond a reasonable doubt with credible evidence. The essence of the crime of burglary is breaking and entering with the intent to commit a theft. The statement attributed to defendant acknowledges the fact that he entered the building with two other people and the group separated once inside the auto dealership. This constituted an admission of the ultimate fact that defendant was guilty of the crime charged and, thereby, constituted a confession. *People v. Rand* (1975), 29 Ill. App. 3d 873, 875, 331 N.E.2d 15, 18.

It is well established that a reviewing court will not set aside a jury's verdict unless the evidence presented at trial is so improbable or so palpably contrary to the verdict as to raise a reasonable doubt of guilt. The credibility of the witnesses and the weight to be given to their testimony and the inferences to be drawn therefrom are solely for the jury. Conflicts or discrepancies in the testimony do not destroy credibility but, rather, go only to the weight to be given to such testimony. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 281, 393 N.E.2d 1098, 1114.) In the case at bar, there was substantial evidence that defendant was one of the men Officer Carney chased. The fact that defendant had a metal pin in his leg does not make the arresting officers' testimony so improbable or unconvincing as to overturn defendant's conviction. The conflicts in testimony, as pointed out in defendant's brief, between the arresting officers and the defendant are discrepancies that affect the witnesses' credibility and are not of such magnitude as to create a reasonable doubt of guilt. *Lewis*, at 282.

Based on the record as a whole, we conclude the evidence is not so improbable as to·raise a reasonable doubt of defendant's guilt, and there is ample evidence to support the jury's finding.

Defendant's final contention is that he was denied a fair trial where the prosecutor informed the jury he was on felony probation, commented on other facts not in evidence, and offered her personal opinion of defendant's allegation that he was coerced into a confession.

The general rule is that remarks by counsel alleged to be prejudicial to defendant must be objected to at trial or the issue is waived. (*People v. Madden* (1978), 57 Ill. App. 3d 107, 114, 372 N.E.2d 851, 856.) Improper remarks during closing argument deny defendant a fair trial and constitute reversible error where the comments influenced the jury to such an extent that substantial prejudice to defendant resulted, or where they operated as a material factor in the conviction. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 288, 393 N.E.2d 1098, 1120.) Defendant made objections to prosecutor's closing argument referring to him as being on felony probation and commenting that he was wearing dark clothing when arrested. The trial court overruled both objections. The prosecutor may comment unfavorably on the defendant, place defendant in a bad light, and draw legitimate inferences from facts in evidence. (*Lewis*, at 288.) In the instant case, defendant testified that he had a prior conviction for burglary, and the police officers testified that defendant was wearing dark clothing when apprehended. Reviewing the prosecutor's comments, we cannot say that substantial prejudice to defendant resulted or that they were a material factor in defendant's conviction.

Defendant also asserts that the prosecutor committed reversible error when she commented that it was an insult to her for defendant to testify

that Officer Carney beat him into a confession and then offer photographic evidence to prove it. The trial record does not show an objection to this comment. In the absence of an objection, improper remarks will be considered only if we are able to say they were so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process. (*People v. Smith* (1977), 53 Ill. App. 3d 395, 404, 368 N.E.2d 561, 568.) We are unable to say that the improper remarks were so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process.

The trial court determines the character and scope of argument to the jury, and it is presumed the trial judge has performed his duty and properly exercised the discretion vested in him. The general atmosphere of the trial is observed by the court, and it cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument and, unless clearly an abuse of discretion, its ruling should be upheld. (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327.) We do not find the prosecutor's remarks to be so flagrant as to constitute reversible error, nor do we find the trial court abused its discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.