THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY LUTZ, Defendant-Appellant.

Second District    No. 81-315

Opinion filed February 8, 1982.

Robert H. Heise, of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Gary Lutz, was tried by jury and convicted of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)). He was thereafter sentenced to six years' imprisonment and appeals, contending: (1) he was not proved guilty beyond a reasonable doubt, and (2) the trial court erred in denying his motion to suppress the identification testimony of the robbery victim which had resulted from suggestive police procedures.

Shortly after midnight on the morning of August 27, 1980, John Hartgerink was employed at a Standard Oil station in West Chicago. He was sitting within the cashier's hut between the pumps when two men wearing nylon stocking masks over their heads burst through the door. One was armed with what appeared to be an automatic pistol, and the other had a can alleged to contain mace which he sprayed into Hartgerink's face. Hartgerink testified that although he was temporarily blinded, his vision cleared within seconds. He then put on his glasses and clearly saw both robbers in the station's fluorescent lights. The gunman held his weapon to Hartgerink's head and demanded all of the money, dumping the cash drawer into a pillow case himself when Hartgerink failed to respond quickly enough. The gunman told Hartgerink to turn around and tapped the gun barrel against his head to remind him he was armed and then ripped the telephone off the wall. The robbers fled on foot into the woods behind the station with about $236 in cash; the entire episode lasted four to six minutes. Hartgerink then ran to a nearby public phone and called police, who arrived shortly. When they searched the woods behind the station, they recovered a motorcycle belonging to defendant, and its engine was still warm.

Later that morning defendant called police and reported his motorcycle stolen. He advised the officers he had been at a local drivein theater with Gregory Blevins on the night in question and the bike had been stolen while they watched the show.

Officers Jerry Dolan and John Steele of the West Chicago police department investigated the robbery. Officer Dolan informed defendant and Blevins that they were suspects and asked them to take polygraphs, to which they agreed. On the morning of August 29, the two came voluntarily to the West Chicago police station, but refused to proceed with polygraphs. That morning Officer Steele had summoned Hartgerink to the station to take a polygraph to confirm that a robbery had occurred, a standard procedure of the West Chicago police department. As Hartgerink entered the police station through the double set of glass doors at the

entrance, he saw defendant and Blevins sitting in the foyer area. He made no sign of recognition but walked into the hall and encountered Officer Dolan, informing him that the robbers were in the station and pointing them out. The officers then procured an "instant" camera to make photographs for a lineup. Fourteen photos of seven individuals were taken, both full face and profile of their heads and shoulders. Defendant and Blevins were two of the seven, four were males in defendant's age group, the seventh was a woman; each wore a nylon mask. The 14 photos were randomly arranged on a desk; upon viewing them Hartgerink identified defendant as the gunman and Blevins as his accomplice.

Defendant persisted in his original story that his motorcycle had been stolen until shortly before trial, when Blevins admitted he was the robber who sprayed mace on Hartgerink and inculpated defendant as the gunman. Blevins pleaded guilty to a reduced charge of robbery and testified for the State at defendant's trial in return for a term of imprisonment of three years.

In trial, defendant testified he was at a drivein movie with Dan Maloney at the time of the robbery and that Blevins borrowed the motorcycle during the movie, returning several hours later without it. Defendant further testified that Blevins admitted to him he had robbed the gas station with an unnamed accomplice and had abandoned the motorcycle to evade police. Defendant stated he had lied to the police about the motorcycle being stolen to protect Blevins, his long-time friend, and to provide him an alibi.

Defendant initially argues he was not proved guilty beyond a reasonable doubt for three reasons. First, that due to the mace shot into Hartgerink's eyes, it was impossible for him to see his assailants and identify them.

Defendant has submitted to this court within his brief certain scientific data analyzing the effects of mace on human test subjects. Included is a 1967 report prepared for the Department of the Army, Edgewood Arsenal, Maryland, by an unknown author, entitled "Characteristics of Riot Control Agent CS," a form of mace. Also included is a 1969 publication from the International Association of Chiefs of Police entitled "ETC Bulletin" which evaluates police equipment technology and describes the effects of CN and CS formulations of mace. The State has moved to strike this material from defendant's brief as no showing has been made that defendant has the requisite scientific knowledge to interpret the data or ascertain its correctness. The State further contends this is an improper attempt to offer new evidence not of record in the trial court. We agree, and the publications will be stricken.

■■■ Attachments to briefs not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record. (*Kazu-*

bowski v. Kazubowski (1970), 45 Ill. 2d 405, 415, 259 N.E.2d 282, 289, cert. denied (1970), 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188; Silny v. Lorens (1979), 73 Ill. App. 3d 638, 642-43, 392 N.E.2d 267, 270-71.) The proper place to present and analyze such data is in the trial court. No evidence was presented in trial identifying the substance sprayed at Hartgerink's face other than Blevin's representation of it as "mace," and its chemical composition, age, strength or condition is not shown. Nor was evidence offered in trial describing the effects of mace or similar products in such circumstances.

Whatever was in the can and sprayed at Hartgerink, he testified he was not disabled or blinded other than momentarily, which was substantiated by Blevin's testimony. Extensive cross-examination explored this question before the jury. The credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn therefrom are for the jury to determine (People v. Alvarez (1981), 93 Ill. App. 3d 111, 116, 416 N.E.2d 1217, 1221; People v. Randall (1980), 84 Ill. App. 3d 888, 893, 405 N.E.2d 1269, 1274), as was the reliability of the victim's identification of defendant as the robber in this case (People v. Jackson (1977), 69 Ill. 2d 252, 261, 371 N.E.2d 602, 606; People v. Warfel (1979), 67 Ill. App. 3d 620, 623, 385 N.E.2d 175, 178, appeal denied (1979), 75 Ill. 2d 589). We see no basis upon which to set aside its determination.

■■ Secondly, defendant argues that a reasonable doubt of his guilt is raised because Gregory Blevins' testimony implicating defendant in the robbery was motivated by a plea bargain between Blevins and the State and therefore cannot support his conviction. In exchange for his testimony the offense charged against Blevins was reduced from armed robbery to robbery, other pending charges were dropped and a three-year minimum term of imprisonment recommended. Initially, we note that Blevins admitted his guilt and implicated defendant before any such agreement was reached. Even uncorroborated accomplice testimony is competent evidence which alone may sustain a conviction if it satisfied the jury beyond a reasonable doubt, and promises of leniency in exchange for testimony go merely to the weight, not admissibility, of such testimony. (People v. Miller (1981), 94 Ill. App. 3d 725, 729, 419 N.E.2d 78, 81; People v. West (1977), 54 Ill. App. 3d 903, 906, 370 N.E.2d 265, 268.) In the case at bar, Blevins' testimony was in fact corroborated by the victim of the crime.

Finally, defendant contends he was not proved guilty beyond a reasonable doubt because of contradictions in the testimony of the State's witnesses, the lack of tangible evidence linking him to the crime and the fact that his alibi witness, Don Maloney, was unimpeached.

■■■ Discrepancies or conflicts in testimony affect only the weight to be given to it and the trier of fact is free to accept or reject as much or as little

as it pleases of a witness' testimony in a criminal prosecution. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, 1009-10, 418 N.E.2d 112, 123-24; *People v. Alvarez* (1981), 93 Ill. App. 3d 111, 116, 416 N.E.2d 1217, 1221.) The discrepancies suggested by defendant include, *inter alia*, whether defendant wore a windbreaker or a t-shirt on the night in question; whether the weapon used was a .45 automatic pistol or a B-B gun; which robber entered the station first; and, whether or not Hartgerink was seated immediately prior to the robbery. Minor inconsistencies in testimony such as these do not themselves render the testimony unworthy of belief or destroy credibility of the witnesses but go only to the weight to be accorded such testimony. *People v. DeJesus* (1981), 94 Ill. App. 3d 1018, 1020, 419 N.E.2d 510, 512; *People v. Jackson* (1980), 89 Ill. App. 3d 461, 468, 411 N.E.2d 893, 899.

As to the lack of tangible evidence, it is clear that a conviction may be sustained on circumstantial as well as direct evidence and inferences drawn therefrom (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 851, 410 N.E.2d 931, 950, *cert. denied* (Nov. 30, 1981), 50 U.S.L.W. 3439; *People v. Toolate* (1976), 45 Ill. App. 3d 567, 569, 359 N.E.2d 1062, 1064); direct evidence was presented here. Defendant's motorcycle, still warm, was found near the robbery scene; defendant was positively identified as the gunman by the victim and one robber admitted guilt and testified defendant was his accomplice. The adequacy of proof to support a conviction depends upon the facts of each case. (*People v. Klisnick* (1979), 73 Ill. App. 3d 148, 156, 390 N.E.2d 1330, 1335.) Clearly, this verdict is well supported by the record and not so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of guilt; we will not disturb it. *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331, 334; *People v. Davis* (1981), 95 Ill. App. 3d 161, 166-67, 419 N.E.2d 682, 686.

Defendant also argues his alibi was unimpeached as Don Maloney testified defendant was with him at the time of the robbery and, therefore, guilt has not been established. We note this witness was impeached by the version of events given by the State's witnesses and by his own testimony on cross-examination. He admitted he had no independent recollection of the date and time of the movie when defendant was alleged to be with him. Further, the precise time he was with defendant, critical to the alibi, was premised on his guess of the running time of the average motion picture, which he speculated was 2½ hours. Even were his recollections unquestionable, the jury was free to reject the testimony of an alibi witness even if uncontradicted. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 729, 415 N.E.2d 1328, 1334; *People v. Hunt* (1980), 90 Ill. App. 3d 496, 501, 413 N.E.2d 215, 218.) In trial, defendant's mother gave yet another version of his location on the night in question.

Defendant's second principle contention relates to the merits of his

motion, which the trial court denied, to suppress any in-court identification of him by the victim, John Hartgerink, on the ground that his stationhouse identification was so impermissibly suggestive as to taint subsequent identification by the witness. Several issues are raised within this general argument.

■■■ Defendant argues that the confrontation between himself and Hartgerink at the West Chicago police station constituted an impermissible and suggestive showup. While the practice of showing suspects singly to witnesses for identification and not as part of a lineup has been condemned (*United States v. Wade* (1967), 388 U.S. 218, 230-31, 18 L. Ed. 2d 1149, 1159, 87 S. Ct. 1926, 1934; *People v. Ward* (1978), 63 Ill. App. 3d 864, 869-70, 380 N.E.2d 883, 887, *appeal denied* (1978), 71 Ill. 2d 621), it is not always improper. Whether the confrontation violated a defendant's right to due process by unfairly focusing on him depends upon the totality of the circumstances surrounding the identification. (*Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972; *People v. Speck* (1968), 41 Ill. 2d 177, 193, 242 N.E.2d 208, 217, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279.) Evidence of even an unnecessarily suggestive identification may nevertheless be admissible if reliability is shown using the totality standard. (*People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) There is nothing in the record of this case to demonstrate that police officers in any way improperly induced the witness to make this identification. While defendant was in the police station, he had come there voluntarily and was not visibly in custody. If he had taken the polygraph as expected, he would have been elsewhere. Hartgerink was not informed robbery suspects were at the station, and it is apparent that the confrontation between defendant and victim was fortuitous. The identification of defendant as the gunman by Hartgerink, based on this confrontation, was immediate, spontaneous and unqualified. An identification based upon an accidental encounter, where unprompted and positive, is not an impermissible showup and does not taint the in-court identification by the witness where the police neither arranged the chance encounter or suggestive circumstances. (*People v. Braxton* (1980), 81 Ill. App. 3d 808, 816, 401 N.E.2d 1062, 1067-68, *appeal denied* (1980), 81 Ill. 2d 584; *People v. Fultz* (1975), 32 Ill. App. 3d 317, 339-40, 336 N.E.2d 288, 306-07, *appeal denied* (1976), 61 Ill. 2d 602; *People v. Wright* (1970), 124 Ill. App. 2d 223, 230-31, 260 N.E.2d 265, 269.) The trial court did not err in refusing to suppress this identification.

■■ Defendant next contends that he was prejudiced by the use of a photographic lineup rather than an actual lineup as he was then in custody. However, there is no legal necessity an identification be made in

a lineup; the practice of showing photographs of suspects to witnesses has been approved as essential to law enforcement and is not prohibited even if defendant is in custody. *People v. Duarte* (1979), 79 Ill. App. 3d 110, 119, 398 N.E.2d 332, 339; *People v. Philson* (1979), 71 Ill. App. 3d 513, 520, 389 N.E.2d 1223, 1228-29.

■■ Defendant then argues that because of physical disparity in the subjects portrayed, the photographic lineup was suggestive and emphasized him. Of the six subjects shown in addition to defendant, two weighed in excess of 200 pounds while defendant weighed 125 pounds, two had mustaches while defendant was clean-shaven, and one was a woman. Alleged suggestiveness in a constitutionally valid pretrial identification procedure affects only the weight of an identification and not its validity. (*People v. Caliendo* (1980), 84 Ill. App. 3d 987, 997-98, 405 N.E.2d 1133, 1141, *appeal denied* (1980), 81 Ill. 2d 594.) Again, the touchstone is reliability of identification based upon the totality of the circumstances. (*People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) For an identification to require exclusion, it must result from impermissible suggestiveness which gives rise to a substantial likelihood of irreparable misidentification. (*People v. Hatcher* (1977), 45 Ill. App. 3d 374, 390, 359 N.E.2d 1157, 1169-70, *appeal dismissed* (1977), 66 Ill. 2d 626.) No such likelihood exists here. The photographic identification made merely confirmed the victim's prior identification of defendant as the gunman. As a nylon mask distorts facial features, the police apparently sought a second identification as an additional precaution. Nor is there a requirement that all subjects in a lineup be physically identical, and differences in size or appearance between defendant and the other subject go to the weight and not the admissibility of the identification. (*People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 788-89, 408 N.E.2d 23, 28; *People v. Miller* (1977), 55 Ill. App. 3d 421, 427, 370 N.E.2d 1155, 1160.) The fact that some had mustaches while defendant did not is also of no consequence. (*People v. Rosa* (1981), 93 Ill. App. 3d 1010, 1015, 418 N.E.2d 124, 128.) Further, the photos portray the subjects from the chest up making it difficult to gauge their weight or relative body size. The inclusion of a woman's photograph is of no consequence here as both she and defendant had shoulder length hair. The trial court correctly determined that the photographic lineup was not impermissibly suggestive; even had it been suggestive it could not have tainted the in-court identification of defendant because the victim had already unequivocally identified him as the gunman before the lineup occurred.

■ Defendant also argues that the in-court identification of defendant by John Hartgerink should have been suppressed as it did not have an origin independent of suggestive police procedures. We have determined that

no suggestive procedures were employed but, in any event, the in-trial identification would be permissible if an independent origin for it could be shown. (*People v. Lomax* (1980), 89 Ill. App. 3d 651, 657, 411 N.E.2d 1212, 1216; *People v. Richard* (1980), 88 Ill. App. 3d 247, 252, 410 N.E.2d 459, 464.) Factors to be considered to determine an independent origin are: the length and quality of the witnesses' opportunity to observe (here four to six minutes in a well-lit area); the degree of attention displayed by the witness (high, as Hartgerink was confined with the robbers in a small area with a weapon pointed at his head); any discrepancies with the prior description given by the witness and defendant's actual description (Hartgerink described the robber as about 25 pounds heavier and 2 inches taller but otherwise similar); circumstances of the witness' prior identification (Hartgerink identified defendant spontaneously and with certainty); and length of the time lapse between the crime and the identification (Hartgerink initially identified defendant approximately 40 hours after the crime and at trial approximately 6 months later). (*United States ex rel. Moore v. Illinois* (7th Cir. 1978), 577 F.2d 411, 414, *cert. denied* (1979), 440 U.S. 919, 59 L. Ed. 2d 471, 99 S. Ct. 1242; *People v. Hatcher* (1977), 45 Ill. App. 3d 374, 388, 359 N.E.2d 1157, 1168, *appeal dismissed* (1977), 66 Ill. 2d 626.) Hartgerink's in-court identification was clearly based upon his observation at the scene of the crime and was properly admitted.

Accordingly, the judgment of the circuit court of Du Page County will be affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.