THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROLAND PARQUETTE, Defendant-Appellant.

First District (2nd Division)   No. 83—197

Opinion filed March 27, 1984.

Edwin R. McCullough, of Chicago, and Robert V. Boharic, of Riverside, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and James Fink, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

On November 3, 1981, Roland Parquette was charged by information with three counts of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1), two counts of home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11) and three counts of armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2). After a bench trial he was convicted of murder and was sentenced to 20 years' imprisonment. He contends here that the trial court erred (1) in denying his motion to suppress statements; (2) in admitting into evidence defendant's wife's rebuttal testimony regarding an abortion; (3) the State failed to comply with discovery; and (4) the State failed to prove defendant guilty beyond a reasonable doubt of the mental state required for murder.

At a hearing on defendant's motion to suppress his statements, Officer Schak of the Chicago police department testified that on October 7, 1981, he was investigating the shooting death of James Ward. That evening he and "several" other officers went to defendant's apartment. They heard "breathing or gurgling noise" coming from the apartment. Twenty minutes of pounding on the door did not arouse an occupant. After 20 more minutes the apartment door was forcibly removed. Defendant was found asleep nude in his bed. Several officers, "some" with their guns drawn, awakened and arrested defendant. Several guns were recovered from the apartment, including one later identified as being of the same caliber as that used to kill Ward.

On direct examination Officer Schak testified with regard to interrogation of defendant at his apartment as follows:

"Q. While you were at—and Roland's apartment was at 510 at 2001 West Summerdale—was there any conversation between Mr. Parquette and police officers?

A. Yes, sir.

Q. What was that conversation?

A. His name and—

Q. Didn't you ask or inquire of Mr. Parquette or any officer in your presence in the apartment ask Mr. Parquette anything in regards to the death of James Ward?

A. No, sir."

On cross-examination the following exchanges occurred:

"Q. Did you say [in your police report] then the subject was roused and advised of his rights whereupon he admitted to the shooting of James Ward at his former address 3834 West George Street?

A. Yes, sir.

* * *

Q. Well, now, is this correct where you had written in the police report that you were, he was roused and advised of his rights whereupon he admitted to the shooting of James Ward at his former residence at 3834 West George Street, is that correct?

A. He wasn't roused and advised of his rights immediately; no, sir.

* * *

Q. Well, before the time that he was allowed to dress then he was questioned with respect to the shooting, is that right?

A. No, sir. My recollection of what took place there is probably not what it should be but I know that he was allowed to dress immediately, and any questioning that was done was suspended by me almost immediately. I don't recall questioning him. I really don't.

* * *

Q. He was not advised of his rights at that point [upon being awakened], that is your testimony, is that right?

A. Not when I woke him up; no, sir.

Q. And not before he got dressed, right?

A. No, sir.

Q. And not in the apartment, period?

A. He asked me questions. I don't recall. I don't recall what he asked me or what the conversation was.

Q. Well, he did not waive his Miranda rights inside that apartment, did he?

A. I don't recall."

The only other witness to testify at the suppression hearing was Assistant State's Attorney Phillip Mitchell. Following defendant's arrest, Mitchell interviewed defendant at the police station. Mitchell's testimony indicates that during his interrogation of defendant at least one other person—a police officer—was also present. Mitchell testified that defendant, after being advised of his *Miranda* rights, confessed to shooting the victim.

During argument on his motion to suppress, defendant argued the State had failed to comply with the "material witness" rule which re-

quires the State to produce at the hearing all material witnesses to a confession, or to explain their absence. The court responded that the rule "does not apply in this case." Thereafter the court denied defendant's motion to suppress.

At trial, Debra Ohlson, defendant's wife, testified that she and defendant had been separated for about 1½ years as of the date of the shooting. On the date of the incident she lived with the victim and Kim Shanholtz. She had lived with the victim for six months. She "may" have told defendant she was living with Ward. Defendant and Ward had not previously met. She said her husband was a gun collector.

Officer Schak testified regarding defendant's arrest at his apartment and stated that defendant there "admitted" to being at the scene of the shooting. Assistant State's Attorney Mitchell testified as to his interrogation of defendant at the police station and recited defendant's oral confession to the shooting.

James Tripp and Allen Van Allen testified for defendant. Both testified to his good reputation and that they observed defendant drinking heavily several hours prior to the shooting.

Defendant testified that he is a carpenter, married to Debra Ohlson, but separated from her. He visited with his wife and called her on the phone even though they were separated. He loved his wife in October 1981 when the shooting occurred. On the day of the incident he was drinking heavily. He dialed his wife's number on the phone and a male voice told him "listen jackoff, don't call her anymore" and then hung up. Defendant became "mad," and knowing "there was a gun" at his wife's apartment, he grabbed "a couple of guns" and drove to the apartment.

After defendant had knocked on the door for a time, a man—later identified as Ward—partially opened the door. He said to defendant "listen jackoff, get out of here." Defendant described the man as very "demanding" and "belligerent." Defendant started walking away from the door. The man told him to "get out" of there. As defendant started down the apartment stairs, the man said "that's right jackoff, just keep going." Defendant then turned and fired one shot at the door opening. Defendant stated he was sorry Ward was dead; defendant was only trying to "scare" him. At the time defendant turned and fired, Ward was making a movement—he was "turning *** away from the door" and "backwards towards the apartment."

On cross-examination defendant stated Ward had never touched him nor pointed a gun at him nor had defendant seen a gun in Ward's possession. Although defendant could not see Ward's hands, defend-

ant "thought" Ward would shoot him in the back.

On rebuttal, and over defendant's objection, defendant's wife testified that defendant had impregnated her in March 1981 and had advised her to "get an abortion," for which he paid.

After closing arguments, the court dismissed all charges except murder and found defendant guilty of that charge. Defendant was sentenced to 20 years.

On appeal, defendant contends the trial court erred in denying his motion to suppress statements.

■■■ It is axiomatic that for incriminatory statements obtained from a defendant as a result of custodial interrogation to be admissible, the statements must be found at trial to have been voluntarily made. (*People v. Alvarez* (1981), 93 Ill. App. 3d 111, 416 N.E.2d 1217.) At a hearing on a motion to suppress a confession "[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State." Ill. Rev. Stat. 1981, ch. 38, par. 114—11(d).

When the voluntariness of a confession is challenged, the State has the burden of producing all material witnesses to the confession, or accounting for their absence. (*In re J.C.* (1979), 69 Ill. App. 3d 289, 387 N.E.2d 401.) Although the record here is not clear, apparently "several" police officers were present when defendant was arrested at his apartment and he appears to have made a statement of some kind. At least one police officer was likewise present at defendant's confession to the assistant State's Attorney at the police station. The material witness rule requires that the "State must produce all material witnesses, that is, all witnesses whose testimony is material to the issue of the voluntariness of the challenged statement. [Citations.] This rule is a safeguard against the use of improperly induced or coerced confessions by the State. [Citation.] Alternatively, the State could explain the failure of such a witness to testify." *People v. Robinson* (1980), 87 Ill. App. 3d 621, 624, 410 N.E.2d 121, 123.

The significance of this rule is well illustrated by the case before us. Officer Schak's uncertain testimony with regard to whether defendant, in his apartment, was or was not questioned; did or did not make any statements; was or was not read his *Miranda* rights and did or did not waive those rights is, at best, confusing. Further, the determination of what occurred at defendant's apartment may well be material to establish the voluntariness of defendant's confession alleged to have been subsequently made at the police station. If defendant did in fact make a statement at his apartment, and such statement was determined to be unlawfully obtained, the voluntari-

ness of any subsequent statement would require consideration of, *inter alia,* any effect from the first interrogation. *People v. Davenport* (1977), 49 Ill. App. 3d 130, 363 N.E.2d 1200.

We believe the purpose of the material witness rule will be well served by requiring a new suppression hearing in this instance. (*In re J.C.*) When, as here, a defendant "does not receive a full evidentiary hearing in the trial court on the voluntariness of his confession, including the rights afforded him by Miranda," it is proper to remand the case for a "new full and complete hearing on the admissibility of the defendant's confession." *People v. White* (1973), 10 Ill. App. 3d 914, 923, 295 N.E.2d 300, 306.

If, after hearing, defendant's statement is found to have been voluntary and therefore admissible, the trial court should enter a new judgment of conviction. If defendant's statement is found not to have been voluntary, the circuit court should vacate the judgment of conviction and order a new trial. *People v. King* (1975), 61 Ill. 2d 326, 335 N.E.2d 417.

To forestall the issue of double jeopardy (*People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366) in the event a retrial is held, we find that the evidence produced at trial was sufficient to prove the defendant guilty beyond a reasonable doubt.

■ We believe that two of the other issues raised by defendant merit comment. Defendant contends it was a violation of the husband-wife privilege (Ill. Rev. Stat. 1981, ch. 38, par. 155—1) to allow the wife to testify in rebuttal with regard to defendant having recommended and paid for her abortion. Since we find such testimony irrelevant, we do not reach the issue of whether it is violative of the statute. Rebuttal evidence is that which is introduced by the State to "explain, repel, contradict, or disprove" evidence presented by the defendant. (*People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514.) The "rebuttal" evidence here served none of these purposes and was irrelevant to any issue before the court.

■ Defendant also contends the State failed to meet its burden of proof at the suppression hearing when its witnesses testified only in conclusory language with regard to the *Miranda* warnings given defendant. Both Officer Schak and Assistant State's Attorney Mitchell testified that they had given defendant his *"Miranda* warnings" but did not specify the words actually employed to convey those warnings. We believe such conclusory testimony would be insufficient to establish that defendant received adequate *Miranda* warnings. See *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063; *In re Dennis M.* (1969), 70 Cal. 2d 444, 450 P.2d 296, 75 Cal. Rptr. 1.

For the reasons stated, this cause is remanded for a new hearing on defendant's motion to suppress statements.

Reversed and remanded, with directions.

HARTMAN, P.J., and STAMOS, J., concur.