THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD H. SCARPELLI, Defendant-Appellant.

Second District   No. 79-501

Opinion filed March 28, 1980.—Rehearing denied April 28, 1980.

Edward M. Genson and Jeffry B. Steinback, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Edmund P. Bart, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant was found guilty by a jury of the offenses of theft in excess of $150 and possession of burglary tools. For the offense of theft in excess of $150 he was sentenced to the Illinois Department of Corrections for a term of 5 years and fined $10,000; for the offense of possession of burglary tools he was sentenced to a minimum term of 1 year and a maximum term of 3 years. The sentences were to run concurrently. Defendant now appeals his convictions.

At trial, conflicting versions were presented regarding the events that transpired on the evening of February 8, 1977. Officer Culen, a Willowbrook police officer and the State's chief witness, testified to the following facts. At approximately 7 p.m. on this particular evening, Officer Culen was sitting in his own car in a residential driveway located across the road from the Willowbrook Bowling Alley parking lot. The officer was not in uniform and was engaged in a stakeout of the parking lot because a number of car thefts had recently occurred there between

the hours of 7 p.m. and 10 p.m. During these particular hours bowling leagues were conducted at the bowling alley. It was a clear night, and the officer had an unobstructed view of the parking lot, which was illuminated by large vapor lights.

About 8 p.m. the officer, with the aid of binoculars, observed a vehicle enter the lot and drive slowly up and down several aisles or rows, past a number of empty parking spaces in each row. The vehicle stopped at the end of an aisle near the road and close to the officer's location, and two people stepped from the car and were observed to clean the windshield or lights. Both individuals returned to the car, and one of them picked up a small black bag or case from the car and emerged carrying it pressed against his stomach. Officer Culen further testified that he observed this individual walk down a row about three or four stalls to a 1975 Chevrolet Monte Carlo, which was located under one of the lot's vapor lights. As this person approached the Monte Carlo, Officer Culen radioed for assistance since he believed that he had an auto theft in progress. As he saw the individual approach the Monte Carlo, he started his vehicle still keeping his eyes on the individual. He observed the person enter the Monte Carlo from the driver's side and saw the interior lights of the vehicle come on. He saw no other pedestrian traffic at this time in the area. The officer then proceeded to drive his car to the area of the Monte Carlo. He then noticed exhaust smoke coming from the Monte Carlo, and as he continued to approach slowly, he observed back up lights and saw the Monte Carlo start to back up. He then stopped his car directly behind the Monte Carlo and exited his car. As he did so, he grabbed his wallet and badge case in his left hand and had his pistol in his right hand. At this time, the individual was still in the car with the door closed. The individual in the car opened the door on the driver's side and looked at the officer. The officer held out his badge, at shoulder height, with his gun at his side and called out "Police officer, freeze or halt." At this point, approximately 15 feet separated the officer from the individual in question. The individual then exited the vehicle from the driver's side and ran in a westerly direction. He was pursued by Officer Culen who kept him within his sight and within a distance of 20 feet until he was apprehended. He did not see anyone else in the Monte Carlo as he passed it in pursuit.

The officer also testified that the clothing description and basic size and hair of the individual who exited the first vehicle and entered the second vehicle (the Monte Carlo) fit the defendant. He also identified the defendant in open court as the person who was in the 1975 Monte Carlo.

Officer Culen then testified to running a records check of the subject vehicle, which revealed that Mr. Frank Panoch was the registered owner of the Monte Carlo. Shortly thereafter, an unidentified man approached

him in the parking lot and while looking at the 1975 Monte Carlo said to him "What the hell is my car doing running", and "That is my car." Officer Culen as well as Sergeant Dusek, who had responded to the call for assistance, testified that a subsequent search of the 1975 Monte Carlo revealed an open black bag with a small flashlight that was still on, a pair of vice grips, a lock pulling device, a screwdriver, a pair of pointed pliers, an ignition locking device and a wrench. These items were introduced as evidence during trial.

Mr. Frank Panoch testified at trial. He had been bowling at the Willowbrook Bowling Alley on the evening in question, and as he was walking across the bowling alley parking lot toward his car he noticed some commotion near his vehicle. He then observed his 1975 Monte Carlo with its engine running and its lights on. A police officer told him to return to the bowling alley where he would be contacted later by the police. The police impounded his car that evening, and he obtained release of the vehicle from the Willowbrook police department two days later. In addition, he had not authorized anyone to use his car on the evening in question. Mr. Panoch had purchased the car in December 1974 for $5,900, and the vehicle was still in good condition on the evening of the incident.

Defendant, Gerald Scarpelli, testified in his own behalf that Karen Garcia and he were together that evening and that she dropped him off at the bowling alley so that he could have something to drink while she shopped at a nearby store. Karen Garcia's testimony is in agreement with that of the defendant on this point. Defendant further testified that as he was walking across the parking lot he heard a nearby vehicle start its engine and that when he turned to look at this vehicle he noticed that the driver apparently had fallen over in the car. Defendant then began to walk toward the car, and when he got next to it he saw another man standing on the other side of the subject vehicle pointing a gun at him. Continuing, defendant testified that he did not know that the man with the gun was a police officer, since he was dressed in blue jeans and a sweater and had not identified himself to the defendant. Out of fear for his life, defendant immediately ran through the parking lot and away from the man with the gun.

Two defense witnesses, William Congleton and Linda McCormick, testified that they were in the same parking lot on the evening in question. Mr. Congleton testified that he saw two men initially; that one man had something in his hand which looked "an awful lot like a gun" and that it appeared that he was pointing the gun toward another man; and that both men ran away from the parking lot, the one with the weapon chasing the other. Ms. McCormick testified in a similar vein, except she said she "assumed" what the person had in his hand was a gun. She did not testify as to whether the gun was pointed at anyone. Both witnesses further

testified that they observed a third man in the area after the other two men ran elsewhere and that the third man exited the subject vehicle and ran in the opposite direction of the other two.

On appeal, the defendant contends that his petition for substitution of judges as well as his motion to quash his arrest and suppress evidence were erroneously denied, that he was substantially prejudiced and deprived of a fair trial by improper restrictions imposed upon his right to cross-examine State's witnesses, and that the verdict of the jury was palpably erroneous.

On May 27, 1977, the defendant filed a petition for "change of venue" pursuant to section 1 of "An Act to revise the law in relation to change of venue" (Ill. Rev. Stat. 1973, ch. 146, par. 1) before the trial judge to whom the case had been assigned, naming two judges who were prejudiced against him. This motion was treated as an automatic motion for substitution of judges provided for in section 114—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(a)), and the cause was immediately assigned to and placed on the trial call of a third judge. Thereafter the cause came on for trial on July 9, 1979. The third judge, being otherwise engaged on that day, transferred the cause to a fourth judge for trial. Defendant immediately filed a motion for substitution of judges pursuant to section 114—5(a) of the Criminal Code. The defendant did not move for substitution of judges for cause as provided for under section 114—5(c) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(c)). The court, stating that the defendant had exhausted his rights for such a substitution as a result of the court's having granted his earlier petition, denied the motion.

■■ Illinois case law interpreting section 114—5(a) clearly holds that the section allows only one automatic substitution of judges. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 506-07; *People v. Davis* (1977), 54 Ill. App. 3d 517, 524; *In re Stiff* (1975), 32 Ill. App. 3d 971, 974.) The motion for a substitution of judges was properly denied.

Defendant next contends that his motion to quash and suppress should have been granted because the arresting officer did not have probable cause or reasonable grounds to make a warrantless arrest. With respect to warrantless arrests, the Federal and State constitutional requirement of probable cause (U.S. Const., amend. IV; Ill. Const. 1970, art. 1, §6) and the State statutory standard of reasonable grounds (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)) are synonymous. (*People v. Wright* (1974), 56 Ill. 2d 523, 528; *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770.) Both parties agree that reasonable grounds or probable cause justifying a warrantless arrest exist where the facts and circumstances within the arresting officer's knowledge are sufficient to justify a man of reasonable caution in believing that a person is committing or has

committed an offense. *People v. Wright*; *People v. Lower* (1977), 55 Ill. App. 3d 1014, 1019, *cert. denied* (1978), 439 U.S. 858, 58 L. Ed. 2d 166, 99 S. Ct. 174; *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 189; Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c).

■ Since police officers are subject to a variety of suspicious events and circumstances during the course of their duties, it is not possible to state a general rule regarding what information satisfies the constitutional and statutory probable cause requirements in the area of warrantless arrest. Each case is governed by its own particular facts and circumstances. (*People v. Clay* (1973), 55 Ill. 2d 501, 504-05; *People v. Doss* (1970), 44 Ill. 2d 541, 546; *People v. McCrimmon* (1967), 37 Ill. 2d 40, 43, *cert. denied* (1967), 389 U.S. 863, 19 L. Ed. 2d 131, 88 S. Ct. 120.) Some additional guidelines, however, have been established. The facts upon which probable cause to arrest is based need not be sufficient to convict (*People v. Williams* (1978), 62 Ill. App. 3d 874, 877), but something more than a hunch or mere suspicion is required (*People v. McGowan* (1977), 69 Ill. 2d 73, 77-78, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624; *People v. McCrimmon*, at 43).

■ Defendant contends that he was under arrest the moment the officer told him to halt or freeze, and that at this particular time the officer did not have reasonable grounds or probable cause to arrest him. His position regarding the moment of arrest is erroneous. A police officer's identifying himself as such and ordering the subject to stop does not necessarily constitute an arrest. (*People v. Beall* (1976), 42 Ill. App. 3d 452, 456.) In fact, an arrest is made by an actual restraint of the person or by that person's submission to police custody. (*People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 156; *People v. Guhlstorf* (1978), 56 Ill. App. 3d 381, 383; *People v. Lawson*, at 771; Ill. Rev. Stat. 1977, ch. 38, par. 107—5(a).) Since the defendant fled upon being confronted by the officer, he was not under actual restraint of his person nor did he submit to custody at that time. The defendant's arrest occurred when he was captured by the police following a chase which immediately ensued.

■ Section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 107—14) provides that a police officer, after having identified himself as such, may stop any person for purposes of investigating criminal behavior "* * * when the officer reasonably infers from the circumstances * * *" that criminality is afoot. The requirements for making an investigatory stop of a subject under the above statute are less than those required for making an arrest. (*People v. McGowan*, at 77-78; *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 272; *People v. Garza* (1976), 44 Ill. App. 3d 30, 33; *People v. Hellemeyer* (1975), 28 Ill. App. 3d 491, 495.) The officer's decision to investigate possible criminal behavior must be based on specific and articulable facts which, when combined

with rational inferences from those facts, reasonably warrant the investigative intrusion. *People v. Lee* (1979), 69 Ill. App. 3d 756, 758; *People v. Gunderson* (1978), 66 Ill. App. 3d 516, 522; *People v. Montgomery* (1977), 53 Ill. App. 3d 298, 301-02; *People v. Hellemeyer*, at 495.

In reaching its decision, the trial court found that a combination of all of the facts and circumstances known to the officer at the time of the arrest supported a reason to believe on his part that the defendant was committing a crime on the evening in question. We agree with this finding.

The trial court pointed out that car thefts had previously occurred in the bowling alley parking lot and the investigating officer was well aware of this pattern of crime and as a matter of fact was on a stakeout. The bowling leagues were in mid-progress on the night of the incident. There was very little activity in the parking lot at the time; the vehicle which entered the parking lot drove up and down the various rows of cars, passing a number of vacant parking spaces in each row; the officer observed the subject carrying a black bag, which did not appear to be a bowling bag, against his stomach; the officer saw the subject enter a vehicle which was parked some distance from the subject's own car; the officer observed exhaust fumes coming from the car which the subject had entered; and he saw the car start to move, at which time he blocked the same with his own car. At that time he exited his car, with his badge in one hand and his pistol in the other, and called out "Police officer, freeze or halt."

In light of the facts and circumstances of this case as outlined and discussed above, the officer's decision to stop the vehicle in order to maintain the status quo while he investigated for criminal activity was based on more than a mere hunch, and there were sufficient articulable facts from which he could reasonably infer from the circumstances that criminality was afoot. If there be any question that the officer did not have probable cause to arrest defendant at the time of the initial stop, the added factor of the defendant's flight from the police officer, who had identified himself as such, is sufficient to justify a belief by a person of reasonable caution that the defendant was committing or had committed an offense. (*People v. Addison* (1977), 56 Ill. App. 3d 92, 98; *People v. Beall*, at 457; *People v. Cribbs* (1972), 8 Ill. App. 3d 750, 753; *People v. Staples* (1971), 1 Ill. App. 3d 922, 926. The requisite degree of probable cause to arrest did exist under the facts and circumstances of this case, and the motion to quash and suppress was properly denied.

Another ground upon which defendant seeks reversal is that he was substantially prejudiced and deprived of a fair trial by the trial court's restriction of his cross-examination of the investigating officer in areas of

inquiry which the defendant labels as traditionally legitimate. Generally, defendant's main contentions here are that the trial court sustained objections to questions intended to test the credibility of Officer Culen, prevented the defendant from exploring whether the officer had utilized police reports or had had conversations with the State's Attorney to refresh his memory, and restricted his inquiry into the credibility of the officer's identification of the defendant.

We have carefully reviewed all of these areas of proposed inquiry. More specifically, with reference to the alleged prior inconsistent statements, the judge's ruling were correct, since either no inconsistency was shown or the question dealt with an immaterial matter. However, even if the rulings were erroneous, the variance was so slight that the exclusion constituted no more than harmless error.

■■ The trial court also prevented defendant from examining the officer regarding whether the officer had utilized police reports or had had conversations with the State's Attorney to refresh his memory. The practice of inquiring on cross-examination in a criminal case as to whether and under what circumstances and with whom a witness has discussed the facts of the case is a standard question. Such questions are generally approved. (See *People v. Davis* (1970), 126 Ill. App. 2d 114, 118; *West Chicago Street R.R. Co. v. Byrne* (1899), 85 Ill. App. 488; Annot, 35 A.L.R. 2d 1045 (1954).) Even if the trial court erred in not allowing the cross-examination here, the error is harmless unless a reasonable doubt exists that the restriction of the cross-examination of Officer Culen could have contributed to the defendant's conviction. (*People v. Rehbein* (1977), 54 Ill. App. 3d 93, 100, *aff'd* (1978), 74 Ill. 2d 435; *People v. Lewis* (1974), 18 Ill. App. 3d 281, 285.) Since we conclude that no reasonable doubt exists that the exclusion of this testimony could have contributed to the conviction of the defendant, any error resulting from its exclusion was harmless.

■■ Defendant also contends that he was precluded from legitimate inquiry into the precise nature of Officer Culen's recollection regarding the height of the individual he saw exit the first vehicle and enter the Monte Carlo. Admittedly, defendant has a right to question an identifying witness regarding any matter which goes to discredit, modify or explain his testimony during direct examination. (*People v. Morris* (1964), 30 Ill. 2d 406, 409; *People v. Lewis*, at 284.) Since the nature and credibility of a witness' identification is a legitimate area for cross-examination and since such examination should be accorded a wide latitude (*People v. Lewis*), it would appear that the trial court erred here by unduly restricting defendant's right to cross-examine Officer Culen regarding the officer's identification of the alleged perpetrator of the crime. However, again in the totality of the circumstances shown by the evidence in this case, such

error could not possibly be of such magnitude as to require reversal. The alleged inconsistent statement of the officer which was not admitted dealt with a slight discrepancy in the height of the alleged offender. It should also be kept in mind that this is not a case where the defendant was apprehended some time later on the basis of a description based on clothing, height and size. The investigating officer testified that he saw the individual walk from the first car to the Monte Carlo, enter the Monte Carlo on the driver's side, and that he actually watched this individual exit the car and flee upon confrontation with the officer. The officer was within 20 feet of him at all times during the flight, and he was at all times within sight and within 20 feet of the officer until apprehended. Again, in light of the totality of the circumstances in this case, we determine that no reasonable doubt exists that the restriction of the defendant's cross-examination in this area could have influenced the jury's determination of guilt. Hence, the error was harmless.

■■ We also have considered the argument of defendant that it was the total or cumulative effect of the restrictions of the trial judge in these areas of cross-examination which denied him a fair trial. The law in Illinois is that even where the trial judge has committed error, such error will not require reversal unless the defendant has been prejudiced or the outcome of the trial unduly influenced. Appellate court review is intended to seek out prejudicial error and is not intended to determine whether the record is totally devoid of error. (*People v. Mathis* (1977), 55 Ill. App. 3d 680, 688.) Although the trial court here may have committed error on a few occasions in restricting defendant's cross-examination of the investigating officer, in the context of the entire trial we are satisfied that such foreclosure did not deprive defendant of his constitutional right to confront the witnesses against him or deny him substantial justice or a fair and impartial trial.

Finally, defendant contends that the State failed to prove beyond a reasonable doubt all of the essential elements of the two offenses with which he was charged.

First, he argues that the evidence produced at the trial by the State failed to overcome evidence offered by the defendant which presented an innocent explanation for his presence and activities on the evening in question.

■■ Although defendant presented an alternate and contradictory version of the evening's events, it is well established that the testimony of a single witness, provided that the witness is credible and observed the accused under conditions which would allow a positive identification to be made, is sufficient to support a conviction, notwithstanding the fact that his testimony is contradicted by that of the accused. *People v. Stringer* (1972), 52 Ill. 2d 564, 569; *People v. Gates* (1977), 47 Ill. App. 3d 109, 114.

■■ In contrast to the testimony presented by the investigating officer, defendant's testimony appears highly improbable and may have been rejected by the jury as unworthy of belief. A defendant who explains his presence at the scene of a crime must articulate a reasonable or believable story or be judged by its unreasonableness or improbabilities. (*People v. Davis* (1977), 54 Ill. App. 3d 517, 524; *People v. Harter* (1967), 86 Ill. App. 2d 461, 471; *People v. Booher* (1966), 73 Ill. App. 2d 226, 229.) In order to give credence to defendant's testimony, the jury would necessarily have been forced to conclude that the officer deliberately lied on the stand in order to secure a conviction. Since there is no evidence in the record to indicate that the officer or any other State's witness had acted out of bad motives, the jury apparently chose to give little credence, if any, to defendant's testimony. The jury may have also determined that the testimony of defense witnesses, Congleton and McCormick, regarding the presence of a third man on the evening in question, did not contradict or seriously impugn the credibility of the investigating officer. It is clear in Illinois that it is the responsibility of the trier of fact

"* * * to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. [Citations.] Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact. [Citation.]" (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99.)

Nor do we choose to do so in this case.

Next the defendant argues that the State did not prove the essential element of ownership of the 1975 Monte Carlo beyond a reasonable doubt and thus failed to prove a material part of its case under the Illinois theft statute. Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1).

There is no merit in this contention. In this case, there is ample competent evidence from which the jury could have found that the defendant was caught in the act of stealing an automobile and that the owner of the vehicle appeared at the scene and recognized his car, which was in the custody of the police and remained impounded until the owner retrieved it. The inconsistencies in the testimony of the police officers and Mr. Panoch regarding the color of the car do not constitute a sufficient basis for disturbing the finding of the jury.

We find that the essential elements of the offenses with which the defendant was charged were proved beyond a reasonable doubt.

The judgment of the circuit court of Du Page County is accordingly affirmed.

Affirmed.

SEIDENFELD, P. J., and WOODWARD, J., concur.