THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RODOLFO CASTRO, Defendant-Appellant.

First District (5th Division)   No. 81—548

Opinion filed September 24, 1982.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin D. Sweeney, and Daniel E. Jordan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant Rodolfo Castro was convicted of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)(1)) and sentenced to 18 months' probation.

On appeal he contends that: (1) he was denied a fair trial by the prosecutor's improper cross-examination concerning his use of an interpreter and ability to speak English; (2) the trial court erred in denying defendant's IPI jury instruction on prior inconsistent statements and prior inconsistent conduct; (3) the theft count upon which he was convicted was fatally defective; (4) his right to a speedy trial was violated; and (5) his conviction for felony theft was improper where there was insufficient proof that the stolen snowblower was worth over $150.

The following pertinent evidence was adduced at trial.

John Andrews testified for the State that on June 25, 1980, he owned a storefront used for storing equipment at 1342 North Western Avenue in Chicago, Illinois. At approximately 2 a.m., a police officer came over to his residence, woke him, and informed him that his storefront had been burglarized. He accompanied the police to the storefront where he observed that the front door had been forced open and shattered, and the inside had been ransacked.

Andrews identified a snowblower and a bicycle recovered by the police as belonging to him. He testified that he had bought the snowblower used for $300 although it would probably cost $600 new. He

had used it for five years and it had a broken handle.

Officer Oscar Martinez testified for the State that he and his partner, Officer Jose Salazar, were patrolling southbound on Western Avenue on June 25, 1980, at about 1:45 a.m., when he saw three individuals run across Western Avenue carrying objects, including a snowblower and a bicycle. The officers proceeded to block defendant, who was holding the snowblower, with the squad car whereupon defendant let go of it and began to run away from them. Officer Salazar got out of the squad car and grabbed defendant about 10 feet from the car; however, Officer Martinez was unable to apprehend either of the other men.

Martinez further testified that shortly after his arrest, defendant stated that he was "helping one of the other individuals move some stuff," while in custody at the 13th District police station. Upon cross-examination, Martinez stated that he did not include this statement in the police report.

He further testified in response to cross-examination:

"Q. You had occasion to speak to me yesterday in the hallway right over there, isn't that correct?

A. Yes.

Q. And the State's Attorney, Mr. Kopec, was there, at that time?

A. Yes.

Q. I asked you if Rodolfo Castro made any statements to you on the evening he was arrested?

A. Yes.

Q. You told me he didn't, is that correct?

A. I told you I did not remember."

Officer Jose Salazar testified for the State that he had caught the defendant 10 to 15 feet from the squad car, and when he asked the defendant what he was doing, defendant responded, "Nothing," in English.

Defendant testified on his own behalf through an interpreter that he was 21 years old at the time of trial and had lived in Chicago for the past five or six years. He had come to the United States at the age of six or seven; had returned to Mexico for five years at one time; and currently was working as a waiter at the Knickerbocker Hotel in downtown Chicago. He stated that he spoke mostly Spanish at home although he spoke English at work, which he understood better than he could speak.

He further testified that on June 25, 1980, at 1:45 a.m., he was walking alone on Western Avenue toward a bar to buy some drinks to

take home. He saw a machine in the middle of the street and was pulling it towards the sidewalk when the police arrived. At that time, he turned and saw "many guys" running behind him.

Although he was running a little due to traffic on Western Avenue, he had let go of the machine and was standing still when the police arrived. He further stated that he did not tell the police that he was helping a friend.

Upon cross-examination, the prosecutor questioned him regarding his ability to speak English instead of Spanish. Illustrative of this questioning was the following dialogue:

"Q. Well, if I ask you questions in English, can you answer [them] in English without using the interpreter ***?

A. Yeah, well, I can answer you, but I didn't talk real good English.

Q. Will you try and answer my question. If you can't, we will use the interpreter.

A. I feel better with the interpreter so that way I can say everything that I want to say.

OTHER PROSECUTOR: Judge, ask to continue in English and if the defendant has any problem, he has the assistance of the interpreter.

THE COURT: Yeah. I will let you question and if he doesn't understand, he can have it repeated and be translated.

PUBLIC DEFENDER: Judge, I would object.

THE COURT: Objection overruled.

(Whereupon the [subsequent] answers by the defendant were answered in English.)"

On redirect examination, defendant said he preferred to return to Spanish testimony. During closing argument the prosecutor "asked the jury to remember" that defendant spoke Spanish all during trial but that it "became obvious" that he spoke English "probably as well as I speak if not better."

The record further discloses that, subsequent to defendant's arrest on June 26, 1980, a preliminary hearing was held on July 21, 1980, wherein he was charged by a one-count information with burglary. On November 11, 1980, defendant made his first demand for trial. Jury selection for trial commenced on February 3, 1981.

On that day the court allowed the filing of an additional count against the defendant alleging theft of the snowblower, over the defendant's objection. This second count did not state the name of the defendant as the accused, and was not verified or sworn to by the State's Attorney's office.

Defendant's motion to dismiss the theft count, motion for a new trial, and motion in arrest of judgment were all subsequently denied.

OPINION

We first consider defendant's contention that he was denied a fair trial by the prosecutor's cross-examination concerning his use of an interpreter and ability to speak English.

We note that pursuant to statute (Ill. Rev. Stat. 1971, ch. 38, pars. 165—11, 165—12; and ch. 51, par. 47) an interpreter may be sworn to interpret when necessary, although the calling of an interpreter is normally within the discretion of the trial court. *People v. Soldat* (1965), 32 Ill. 2d 478, 481, 207 N.E.2d 449.

In the present case, the defendant was assisted by an interpreter throughout most of his testimony. We think that, although an interpreter was appointed, the record demonstrates that defendant was nonetheless sufficiently conversant with the English language to understand and make responses in English. Defendant used English understandingly a number of times in testifying and in his initial conversation with the Latino police officer at the time of his arrest.

■ While we are of the opinion that the prosecutor placed undue attention upon the issue of defendant's ability to speak English, the record refutes defendant's claim that he was deprived of a basic right, or was denied a fair trial thereby. There is no indication of record that defendant was either not personally understandable, comprehensible or intelligible (see *People v. Bragg* (1979), 68 Ill. App. 3d 622, 630, 386 N.E.2d 485), or was forced to answer questions which he did not understand.

The law in Illinois is that even where the trial judge has committed error, such error will not require reversal unless the defendant has been prejudiced or the outcome of the trial unduly influenced. Appellate court review is intended to seek out prejudicial error and is not intended to determine whether the record is totally devoid of error. *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 340, 101 S. Ct. 1357.

We therefore reject defendant's argument that the prosecutor's cross-examination of defendant in English was improper and prejudiced his right to a fair trial by allegedly forcing him to answer trick questions.

Defendant also claims that the trial court erred in refusing his tendered instruction regarding prior inconsistent statements and conduct pertaining to Officer Martinez's testimony.

It is clear in Illinois that it is the responsibility of the trier of fact

"to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. [Citations.] Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact. [Citations.]" *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 698, 402 N.E.2d 915, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 340, 101 S. Ct. 1357.

With respect to prior inconsistent statements, a witness may be cross-examined as to prior statements which are repugnant or inconsistent with his testimony at trial, but the inconsistency must relate to material and not collateral or irrelevant matters. *O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533.

The test of whether the prior statement is sufficiently inconsistent to permit its utilization is that the "statement must have a reasonable tendency to discredit the direct testimony on a material matter." (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 73, 392 N.E.2d 251, citing *People v. Curtis* (1977), 48 Ill. App. 3d 375, 386, 362 N.E.2d 1319.) Materiality lies within the discretion of the trial court. *People v. Svoboda* (1979), 75 Ill. App. 3d 487, 394 N.E.2d 72.

The record of the instant case discloses that the officer's testimony with respect to defendant's purported statement that he was "helping one of the other persons move the stuff," where he did not earlier remember or record such statement in the police report, was merely collateral to the issue of defendant's guilt or innocence for the offense charged.

■ Since we are of the opinion that whether or not defendant uttered such a statement is patently immaterial, we find that the trial court properly ruled by refusing to give the tendered instruction on prior inconsistent statements and conduct.

Defendant next contends that the theft count upon which he was convicted was fatally defective in the following specifics: (1) it fails to state the name of the accused; (2) it is not signed or verified by the State's Attorney's office; and (3) it fails to set forth the nature and elements of the offense charged.

As to the latter contention, we note that the supreme court has specifically held that the element of knowledge can be charged " 'either in the language of the statute or *in other appropriate words.*' " *People v. Shelton* (1969), 42 Ill. 2d 490, 494, 248 N.E.2d 65.

Here, the count in issue charged that defendant "committed the offense of theft in that he exerted unauthorized control over the property (Toro snowblower) of the owner, Mr. John Andrews, intending to deprive [him] permanently of the use or benefit of the property, which

was valued in excess of $150 in violation of chapter 38, section 16—1(a)(1) Ill. Rev. Stat. ***."

In *People v. Wilson* (1973), 10 Ill. App. 3d 48, 294 N.E.2d 1, we held that a theft charge which alleges that a defendant obtained unauthorized control of specific property with intent to deprive the owner permanently of its use and benefit is not rendered fatally defective for omission of the word "knowingly."

■ In accordance with these principles, we find that the failure to include the word "knowingly" in count 2 charging theft does not render this charge fatally defective.

We are also not persuaded by defendant's argument that count 2 was fatally defective because it was not verified by the State's Attorney's office and failed to state the name of the accused.

While the authority cited by defendant indicates that an amendment to an information which charges an offense separate and distinct from that charged in the original information must be re-verified (*People v. Moore* (1959), 21 Ill. App. 2d 9, 157 N.E.2d 94), we find the cases cited inapplicable to the case at bar where the defendant did not object to the lack of verification until after the defense had rested its case.

The supreme court has consistently held that a sworn or verified complaint is not a jurisdictional prerequisite to the prosecution of a criminal offense and may be waived by a plea of guilty or by proceeding to trial without objection. *People v. Bradford* (1975), 62 Ill. 2d 21, 338 N.E.2d 182; *People v. Harding* (1966), 34 Ill. 2d 475, 216 N.E.2d 147; *People v. Billow* (1941), 377 Ill. 236, 36 N.E.2d 339.

■ Here, an examination of the record shows that although defendant made several motions to dismiss count 2 prior to trial, he did not specifically object to the lack of verification until after proceeding to trial on all charges. Accordingly, we conclude that defendant has waived the verification issue for the purpose of this appeal.

■ Similarly, we do not find that the omission of defendant's name on count 2 renders it fatally defective where the name of the accused was stated on the first count and where the second count for theft was added in open court.

It is the policy of our modern courts to disregard mere technical objections and require only that the indictment state the essential elements of the offense (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800, *cert. denied* (1979), 444 U.S. 925, 62 L. Ed. 2d 180, 100 S. Ct. 262), and we do not find any showing that defendant was prejudiced by this omission.

Consequently, we conclude that the theft count upon which the

defendant was convicted is not fatally defective under section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3).

Defendant also urges us that his right to a speedy trial under section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5) was violated with respect to the theft count, which was filed over seven months after his arrest and over six months after the original information charging burglary was filed.

We are not persuaded by the cases cited by defendant which hold that trial must commence within 120 days from the date an accused is taken into custody, where, as here, the defendant was not in custody but was out on bond prior to trial.

The pertinent provision applicable to the instant case is, instead, section 103—5(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b)), which provides: "(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within *160* days from the date defendant demands trial unless delay is occasioned by the defendant ***." (Emphasis added.)

The record discloses that defendant made his first of three demands for trial on November 12, 1980, and that trial commenced on February 3, 1981, or 83 days after his first demand for trial had been made.

While the defendant persistently argues that the State waited over seven months before filing the theft count on the date that trial commenced on February 3, 1981, this does not bear upon the clear mandate of section 103—5(b) which requires that we direct our examination only to the time elapsed between defendant's demand and subsequent trial.

■ We conclude, therefore, that the defendant's right to a speedy trial was not violated.

We finally consider defendant's contention that there was insufficient proof of the value of the snowblower to warrant a felony conviction. The owner of the snowblower in the case at bar testified that he had bought it used five years earlier for $300, although it probably cost $600 new, and that it had a broken handle.

To sustain a felony conviction for theft, rather than a misdemeanor, the value of the stolen property must be proven to be in excess of $150. Ill. Rev. Stat. 1975, ch. 38, par 16—1(e)(3).

As the court in *People v. Brown* (1976), 36 Ill. App. 3d 416, 421, 343 N.E.2d 700, stated: "The criterion used in determining value in theft cases is the fair cash market value at the time and place of the theft. [Citations.] Cost is not the standard, whether it be original cost

or replacement cost. [Citations.]"

In the present case, the record discloses that the snowblower was used for five years subsequent to purchase and had a broken handle. Moreover, none of the questions propounded to the complainant related to fair cash market value, but instead concerned the actual price paid and speculation as to its retail value if purchased new five years earlier.

With these factors in mind, we are of the opinion that the evidence of value presented was not sufficient to support a conviction for felony theft.

We therefore reduce the degree of the offense for which defendant was convicted to theft of property not exceeding $150 in value, pursuant to Supreme Court Rule 615(b)(3) (73 Ill. 2d R. 615 (b)(3)) and remand the cause to the circuit court of Cook County for resentencing.

Judgment of guilty affirmed; conviction reduced to theft of property not exceeding $150 in value; cause remanded for resentencing.

Affirmed in part; reversed in part; remanded for further proceedings.

SULLIVAN, P. J., and WILSON, J., concur.