THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN OCASIO, JR., Defendant-Appellant.

First District (3rd Division)   No. 84—0046

Opinion filed September 30, 1986.—Rehearing denied November 14, 1986.

Donald T. Bertucci, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a bench trial, defendant, Juan Ocasio, Jr., was convicted of two counts of murder and sentenced to 25 years in the Illinois Department of Corrections. Defendant appeals his convictions, contending that the trial court erred in denying his motion to quash the arrest and suppress evidence, and in denying his motion to suppress his out-of-court statements. Defendant's motions alleged that he was arrested and his subsequent statements taken in violation of his Federal and State constitutional rights. A full hearing was conducted on defendant's motions.

Defendant was arrested by the Chicago police on January 15, 1982, as the result of an investigation into the deaths of Tina Anderson and Neryda Cruz. The women's bodies had been found at approximately 2:30 a.m. that day in Anderson's first-floor apartment at 1623 North Talman Avenue in Chicago. Both women died as the result of multiple stab wounds.

Detectives Mudry and Storck of the Chicago police department were assigned to the investigation. On the morning of January 15, after having consulted with the initial investigators in the case, the detectives interviewed Wanda Castillo, who is defendant's sister and who resided in the second-floor apartment at 1623 North Talman Avenue. The detectives interviewed Castillo at 1625 North Talman Avenue, the home of defendant and his parents. Castillo informed the officers that she neither saw nor heard anything unusual during the late evening hours of January 14 and early morning hours of January 15. She stated that she had been with her boyfriend, Ramon Quinones, and Maria Echevarria during that time.

The officers then proceeded to the home of Ramon Quinones. They interviewed him in their squad car. Mudry testified that Quinones told them that he had seen defendant on January 15 and that defendant told Quinones that he participated in the slayings of Anderson and Cruz. After the interview, Quinones was transferred to another squad car and taken to the Area Five police headquarters for further questioning.

Officers Mudry and Storck then drove around the Humboldt Park area for approximately one-half hour to forty-five minutes. At 2 p.m. they returned to the Ocasio home. They had no arrest or

search warrant. After gaining entry into the home, the officers arrested defendant. They also took with them Wanda Castillo and Maria Echevarria, who were in the Ocasio home at that time and who had been in the Castillo apartment the prior evening. On the way to police headquarters, the detectives also stopped at a grocery store where Edgardo Ventura, a codefendant, was employed. They picked up Ventura and took him to police headquarters as well.

Defendant was interviewed at headquarters by various police officers and by an assistant State's Attorney. After having been apprised of his *Miranda* rights several times, defendant gave a statement regarding his involvement in the slayings. Defendant was subsequently charged under a 10-count indictment with murder, rape, home invasion, and armed violence.

Defendant moved to quash his arrest and suppress evidence and to suppress his out-of-court statements. Based on the evidence presented at the pretrial hearing, the trial court denied the motions. The decision was based upon the totality of the evidence and the credibility of the witnesses. The trial court found that the officers had probable cause to believe that defendant participated in the slayings of Tina Anderson and Neryda Cruz. The court further found defendant's warrantless arrest reasonable, based on the existence of exigent circumstances. In denying defendant's motion to suppress his out-of-court statements, the court found that the State met its burden of proof that none of defendant's statements were the result of mental coercion or threats of bodily harm. The court determined that defendant was properly advised of his *Miranda* rights, that he knowingly, intelligently and voluntarily waived those rights, and that his statements, therefore, were voluntarily made.

■ The State initially contends that defendant waived the issues presented on review because he failed to file a written post-trial motion for a new trial, as required by section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 116—1). Contentions of error raised by a defendant, other than those relating to the sufficiency of evidence and errors not generally included in post-trial motions, are ordinarily waived on appeal if the defendant did not file a post-trial motion. (*People v. Wright* (1980), 80 Ill. App. 3d 927, 930, 400 N.E.2d 731.) The waiver rule, however, does not require that a defendant file a post-trial motion where he is tried before the court and has raised the issues at the trial level. (*People v. Turner* (1984), 122 Ill. App. 3d 81, 83, 460 N.E.2d 797, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 141, 105 S. Ct. 210; *People v. Wright* (1980), 80 Ill. App. 3d 927, 400 N.E.2d 731; *People v. Kelly*

(1979), 76 Ill. App. 3d 80, 83-84, 394 N.E.2d 739.) In the instant case, the issues on appeal stem from the trial court's denial of pretrial motions to quash arrest and suppress evidence as well as to suppress statements. Defendant was tried by the court and does not raise issues regarding trial errors in his appeal. Therefore, we find no necessity for a post-trial motion.

■ Defendant first contends that his fourth amendment rights were violated because there was no probable cause to justify his arrest. For the purposes of arrest, probable cause exists where the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the offense was committed by the person arrested. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92; *People v. Gholston* (1984), 124 Ill. App. 3d 873, 882, 464 N.E.2d 1179.) A trial court's finding of probable cause will not be disturbed on appeal unless it is manifestly erroneous. *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280; *People v. Thomas* (1984), 123 Ill. App. 3d 857, 863, 463 N.E.2d 832; *People v. Jones* (1983), 119 Ill. App. 3d 615, 623, 456 N.E.2d 926.

During the hearing on defendant's motion to quash arrest and suppress evidence, Mudry testified that, after his interview with Wanda Castillo on the morning of January 15, he and Storck went to the home of Ramon Quinones, and they interviewed him in their squad car. Quinones testified that he informed the detectives that he had been 53 miles away in Carpentersville on the prior evening. However, according to Mudry, Quinones told him that he had been in a van parked in front of the victims' apartment drinking rum with Pedro Miranda, the owner of the van, Edgardo Ventura, and the defendant. Mudry stated that Quinones informed him that, during this time, Miranda told the others that "he was going to take care of Tina because she burned him." He further stated that Quinones said that he began to feel ill and went up to Castillo's apartment and that defendant and Ventura later came to the apartment. Mudry testified that Quinones said that defendant informed those present in the apartment that Anderson and Cruz were dead, that Miranda had stabbed Anderson, and that he, Miranda, and Ventura had stabbed Cruz. Quinones also told them that Miranda had ordered defendant and Ventura to "keep their mouth shut" and that he would burn the knives used in the slayings at the foundry where he worked. In contrast, Quinones testified that, prior to arriving at police headquarters, he provided the police with no information which would have

led them to defendant.

■ Defendant, relying on Quinones' statement that he gave no information to the police before arriving at Area Five headquarters, argues that the police could not therefore have had probable cause to arrest him at approximately 2 p.m. on January 15. We disagree with defendant's contention. Although Quinones claimed to have given the officers no information prior to his arrival at police headquarters, there also was testimony that information given by Quinones prior to that time led the detectives directly to defendant as a suspected participant in the double homicide. Where there is conflicting testimony-between witnesses, such testimony affects only the weight it is to be given, and the trier of fact may accept or reject all or part of a witness' testimony. (*People v. Lutz* (1982), 103 Ill. App. 3d 976, 980-81, 431 N.E.2d 753; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 1009-10, 418 N.E.2d 112, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) It is up to the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. A court of review will not substitute its judgment where the evidence is merely conflicting. (*People v. Castro* (1982), 109 Ill. App. 3d 561, 565-66, 440 N.E.2d 1008, citing *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 698, 402 N.E.2d 915, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 340, 101 S. Ct. 1357.) We do not find the trial court's determination regarding the conflicting testimony to be against the manifest weight of the evidence and, therefore, its decision must stand.

A determination of probable cause must be based upon the totality of facts and circumstances present in each case. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) We find that the *Gates* standard was met in this case and disagree with defendant that the information provided by Quinones was insufficient to establish probable cause. The trial court's finding of probable cause was not manifestly erroneous and will not be disturbed.

■ Defendant further argues that his fourth amendment rights were violated when the officers entered his home to arrest him without an arrest or search warrant. He maintains that there existed no exigent circumstances to justify such an arrest. In determining whether exigent circumstances exist, each case should be decided on the basis of the facts presented, with the guiding principle being reasonableness. (*People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct.

2364; *People v. Abney* (1980), 81 Ill. 2d 159, 173, 407 N.E.2d 543; *People v. Johnson* (1984), 121 Ill. App. 3d 358, 363, 459 N.E.2d 1000.) A number of factors have been found useful in determining whether an exigency exists. These factors include whether: (1) there is a need for prompt police action; (2) there is no deliberate or unjustified delay during which the officers could have obtained a warrant; (3) a grave offense is involved, particularly a crime of violence; (4) the suspect is reasonably believed to be armed; (5) there exists a clear showing of probable cause; (6) there is strong reason to believe that the suspect is in the premises; (7) there is a likelihood the suspect will escape if not swiftly apprehended, and (8) the nonconsensual police entry into the premises is peaceful. (*Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, 392-93 (*en banc*); *People v. Yates* (1983), 98 Ill. 2d 502, 515-16, 456 N.E.2d 1369, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Johnson* (1984), 121 Ill. App. 3d 358, 363-64, 459 N.E.2d 1000.) These factors, however, are to be considered only as guidelines in determining the reasonableness of a warrantless arrest. (*People v. Yates* (1983), 98 Ill. 2d. 502, 456 N.E.2d 1369.) Each factor need not be present in every case in order to find the presence of exigent circumstances but, rather, need only to be satisfied upon balance. (*People v. Cobb* (1983), 97 Ill. 2d 465, 484, 455 N.E.2d 31; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 1005, 418 N.E.2d 112, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) A reviewing court will not disturb a trial court's determination of factual matters on a motion to suppress unless it is manifestly erroneous. *People v. Stewart* (1984), 104 Ill. 2d 463, 477-78, 473 N.E.2d 1227, *cert. denied* (1984), 471 U.S. 1120, 86 L. Ed. 2d 267, 105 S. Ct. 2368; *People v. Free* (1983), 94 Ill. 2d 378, 401, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200; *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.

In reaching its determination that exigent circumstances justified defendant's warrantless arrest, the trial court found the following factors present: (1) a grave offense, two murders, was involved; (2) the officers could reasonably believe that the defendant was armed, based upon their knowledge that the murders were committed by multiple stabbings; (3) there was a clear showing of probable cause based upon the officers' conversations with the initial investigators and with Ramon Quinones; (4) there was strong reason to believe the defendant was in his known residence on the afternoon of his arrest; (5) it was not unreasonable for the officers to believe that the defendant might have escaped if not swiftly apprehended, based

upon his involvement in two murders; (6) the nonconsensual entry was accomplished with a minimum of force, no weapons were displayed, the officers identified themselves, they pushed the door open only after it was opened partially by the defendant's mother, and nothing was broken on the premises; (7) the entry was in the daytime; (8) the officers acted promptly after having gained information which established probable cause, and (9) there was no delay during which time an arrest warrant could have been obtained.

In response to the trial court's findings, defendant first contends that there was minimal, if any, need for prompt police action since the State stipulated that no officers of the Chicago police department had knowledge of flight or attempted flight by defendant. We believe, however, that the very nature of these crimes lent credence to the reasonable possibility that defendant might have attempted to avoid his arrest. This possibility was perhaps even more likely once the police began to question those persons who had a close relationship with defendant, such as his sister and her boyfriend. See *People v. Cobb* (1983), 97 Ill. 2d 465, 486, 455 N.E.2d 31.

Defendant next maintains that the trial court erred when it found that there was no delay during which time an arrest warrant could have been obtained. Defendant argues that the officers could have obtained an arrest warrant during the one-half hour to forty-five minutes that they drove around the Humboldt Park area. Nevertheless, there was no showing by defendant of the time it would have taken the officers to proceed from the Quinones home to the First Municipal District Court, request and obtain a warrant for defendant's arrest, and then proceed to defendant's residence. We believe that the half hour to forty-five minutes time was not unreasonable in light of the evidence presented. Even if the officers had had the opportunity to obtain a warrant, the trial court's finding of exigency would not necessarily be invalid. As noted above, the various factors frequently considered are not exclusive and need not all be present for a finding of exigent circumstances. *People v. Henderson* (1981), 96 Ill. App. 3d 232, 236, 421 N.E.2d 219.

Defendant further argues that the trial court's determination that the officers could reasonably believe that defendant would be armed was improper. Defendant notes that Quinones allegedly indicated that Pedro Miranda had taken the murder weapons to be melted down at the foundry where he worked. We agree with the trial court that there could be a reasonable belief that a perpetrator of such brutal slayings as these would be in possession of a deadly weapon.

The defendant also alleges that, for the purposes of determining exigent circumstances, the presence or lack of a clear showing of probable cause was seriously in question. He highlights the conflicts in the testimony of the detectives who indicated that they were led to Ocasio by information from Quinones, and the testimony of Quinones, which indicated that he did not make a statement regarding defendant until after he arrived at police headquarters where he saw defendant already under arrest. As previously discussed, we believe that the trial court was in the best position to view the witnesses, evaluate their testimony, and determine their credibility.

■ Defendant maintains that the trial court should not have found a clear showing of probable cause based on its reliance on Mudry's and Storck's testimony regarding their interview on January 15, 1982, with Quinones in their squad car. According to the officers, in that interview Quinones implicated the defendant in the murders of Anderson and Cruz. Quinones, however, testified that he was not in Chicago on January 14, 1982. On another issue, the trial court did not accept the testimony of the officers when they indicated that the defendant voluntarily accompanied them to police headquarters after they spoke with him on the front porch of his home. Instead the trial court accepted the stipulation between defendant and the State that defendant was arrested in his home and found that the arrest resulted from a forced nonconsensual entry. Defendant therefore concludes that the trial court erred in accepting portions of the officers' testimony and rejecting other portions thereof. We disagree. Again, any conflicts or discrepancies in testimony go only to the weight to be given it, and the trier of fact may accept or reject as much or as little as it pleases of the testimony in a criminal prosecution. (*People v. Lutz* (1982), 103 Ill. App. 3d 976, 980-81, 431 N.E.2d 753; *People v. Thompson* (1981), 93 Ill. App. 3d 995, 1009-10, 418 N.E.2d 112, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) Therefore, because the trial court did not accept the officers' testimony regarding defendant's apprehension does not mean that it must also reject all of their testimony on other issues.

■ Defendant finally urges that we find his fourth amendment rights were violated based upon *People v. Wormack* (1980), 91 Ill. App. 3d 169, 414 N.E.2d 177. The *Wormack* defendants were sought for armed robberies and a burglary, during which one defendant had a shotgun and the other a pistol. The court there found that, although there was probable cause to arrest defendant Wormack, there were not sufficient exigent circumstances to justify a warrantless arrest. Nevertheless, *Wormack* is distinguishable from the instant case.

In *Wormack*, the police officers forced open a locked outer door into the common entryway of defendant's apartment building at 2:00 in the morning. The court found no evidence that the suspect was in the apartment when they entered or that he would be armed. Further, the court stated that there was no evidence concerning the likelihood that the suspect would flee the building during the time necessary to obtain a warrant. The court also questioned the reasonableness of an entry at 2 a.m., particularly in light of the fact that nighttime warrants were available. In contrast, the officers in the instant case did not violate defendant's rights in their manner of entry into his home, and defendant has not convinced us otherwise. They had reason to believe he would be in the premises of his home and, as previously discussed, that he might attempt to flee. After examining the numerous factors present here, we agree with the trial court that the officers acted reasonably, and that exigent circumstances were present which precluded the necessity for an arrest warrant. Defendant's fourth amendment rights, therefore, were not violated.

Because we find that defendant's warrantless arrest did not violate his constitutional rights, we need not address the argument that his subsequent statements to the police should have been suppressed as the result of an illegal arrest. We next address defendant's contention that the trial court erred in denying his motion to suppress his statements. He claims that his fifth amendment rights were violated because the statements he made while in custody were involuntary due to threats and physical harm.

■ In determining whether a statement was voluntarily given, a court will look to the totality of circumstances involved. (*People v. Holloway* (1985), 131 Ill. App. 3d 290, 307, 475 N.E.2d 915.) The court need be persuaded only by a preponderance of the evidence that the statement was voluntary. (*People v. Cozzi* (1981), 93 Ill. App. 3d 94, 98, 416 N.E.2d 1192.) The test used to evaluate the voluntariness of a statement is whether it was freely made without inducement or compulsion of any sort or whether a defendant's will was overcome when he confessed. (*People v. Martin* (1984), 102 Ill. 2d 412, 427, 466 N.E.2d 228 (citing *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731), *cert. denied* (1984) 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) In assessing the nature of a statement, factors to be considered include the age, education and intelligence of the accused, the duration and method of questioning, whether the accused was given his constitutional rights or subjected to physical

punishment, and whether the accused was provided with necessities during questioning. *People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.

■ Defendant testified that he was handcuffed by one hand to a wall in the interrogation room. He indicated that, although he requested an attorney after having been read his *Miranda* rights, an officer told him that he would be better off without one and that he should make a statement if he wanted to avoid physical harm. Defendant stated that Mudry grabbed him by the neck and threw him against a chair and also threatened him with harm if he did not make a statement regarding his participation in the murders. He introduced at trial a photograph taken while he was in custody which allegedly revealed a bruise on his neck resulting from Mudry's actions; however, defendant has not included this photograph in his record on appeal under Illinois Supreme Court Rule 608. (87 Ill. 2d R. 608.) Defendant further claimed that he decided to cooperate with the investigation only after Mudry returned to the interview room and told him that Ventura had given information regarding the slayings. Defendant also testified that he had informed Storck as well that he wanted an attorney and that Storck, too, told him he would be better off without one.

Defendant's mother testified that she saw her son in the interrogation room, crying and handcuffed by one hand to the wall. She also stated that she had observed the mark on his neck but did not know how he received it. She indicated that her son told her that he had been threatened and choked by the officers.

Mudry testified that defendant was seated and not handcuffed during questioning. He explained that defendant was fully advised of his *Miranda* rights which he said he understood. Mudry indicated that he did not threaten to beat defendant and did not coerce him into making statements and that it was defendant who informed Mudry that he wanted to talk. Mudry testified that he never told defendant he would be better off without an attorney, and that defendant never told Mudry that he wanted one. Mudry further stated that defendant did not cry in his presence. Storck, who was present during the questioning of defendant, corroborated Mudry's explanation of the events.

Defendant also was questioned later by an assistant State's Attorney, David Kerstein, who testified that he informed defendant of his *Miranda* rights prior to questioning. According to Kerstein, defendant did not request an attorney, no one in his presence told

defendant he would be better off without an attorney, and no threats were made to defendant. Kerstein stated that defendant did not cry in his presence. He offered defendant food, coffee, and the opportunity to use the washroom facilities. When Kerstein later saw defendant in an interview room, Mudry and a court reporter also were present. Kerstein again advised defendant of his *Miranda* rights, and defendant proceeded to give a statement regarding his involvement in the murders. Kerstein indicated that, after the statement was transcribed, he took it to defendant and asked him to initial each page if he agreed with the statement. Defendant did so. Regarding the mark on defendant's neck, Kerstein testified that he had seen it but that defendant never complained to him of any pain or discomfort.

The trial court found that defendant's statements about his participation in the slayings were not the result of mental or physical coercion. It determined that, based upon the evidence produced at the hearing and upon the testimony and credibility of the witnesses, defendant's statements were voluntary. In making a determination regarding the voluntariness of a defendant's statement, the trial court need not be convinced beyond a reasonable doubt, and its findings will not be disturbed unless they are against the manifest weight of the evidence. (*People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334; *People v. Davis* (1983), 97 Ill. 2d 1, 20, 452 N.E.2d 525.) We find here that, despite the conflicting testimony regarding the conditions under which defendant's statements were made, the trial court's finding of voluntariness was not against the manifest weight of the evidence. Defendant's constitutional rights were not violated.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.